

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00130-CV

**TEXAS DEPARTMENT OF TRANSPORTATION,**

**Appellant**

**v.**

**KATHLEEN GALLOWAY-POWE, INDIVIDUALLY
AND AS REPRESENTATIVES OF THE ESTATES
OF MANLEY D. GALLOWAY, DECEASED
AND ELFRIEDE GALLOWAY, DECEASED,**

**Appellees**

---

**From the 52nd District Court
Coryell County, Texas
Trial Court No. DC-17-46346**

---

## DISSENTING OPINION

The Texas Department of Transportation (TxDOT) appeals the trial court's denial

of its motion to dismiss Kathleen Galloway-Powe's wrongful death and survivor actions

for lack of jurisdiction. Because I would affirm the trial court's Order denying TxDOT's

motion to dismiss, I respectfully dissent.

TxDOT argues that it retains sovereign immunity based upon Section 101.056 of

the Texas Tort Claims Act.  Section 101.056 of the Texas Tort Act states:

This chapter does not apply to a claim based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

TEX. CIV. PRAC. & REM CODE § 101.056 (West).  TxDOT contends that its decisions regarding the design and construction of the intersection and the traffic signal to be used are discretionary under Section 101.056.

Galloway-Powe agrees that the design and construction of the intersection are discretionary acts under Section 101.056.  Galloway-Powe further agrees that "the decision to employ a traffic signal device and protected/permissive left turns was a discretionary act."  Galloway-Powe argues, however, that once the decision was made to use a traffic signal device, that device had to comply with the National Manual for Uniform Traffic Control Devices (National MUTCD).  I agree.

The National MUTCD states in the Introduction:

In cases involving Federal-aid projects for new highway or bikeway construction or reconstruction, the traffic control devices installed (temporary or permanent) shall be in conformance with the most recent edition of the National MUTCD before that highway is opened or reopened to the public for unrestricted travel.  [23 CFR 655.603 (d) (2) and (d) (3)]

NATIONAL MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES, 2009, Introduction, p. 21.

The record shows that TxDOT received federal aid for this project. Therefore, it was required to conform with the most recent edition of the National MUTCD.

Section 4D.20 of the National MUTCD states:

Standard:
01 If a shared signal face is provided for a protected/permissive mode left turn, it shall meet the following requirements (see Figure 4D-11):
    A. It shall be capable of displaying the following signal indications: steady CIRCULAR RED, steady CIRCULAR YELLOW, CIRCULAR green, steady left-turn YELLOW ARROW, and left-turn GREEN ARROW. Only one of the three circular indications shall be displayed at any given time. If the left-turn GREEN ARROW signal indication and the CIRCULAR GREEN signal indication(s) for the adjacent through movement are always terminated together, the steady left-turn YELLOW ARROW signal indication shall not be required.
…
02 If a separate left-turn signal face is being operated in a protected/permissive left-turn mode, a CIRCULAR GREEN signal indication shall not be used in that face.

NATIONAL MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES, 2009, § 4D.20. There is no dispute that the traffic signal did not comply with Section 4D.20.

The question before us is whether compliance with the National MUTCD was mandatory. It is well settled that compliance with the Texas Manual is not mandatory. *See State Dep't of Highways & Pub. Transp. v. King*, 808 S.W.2d 465, 466 (Tex. 1991). However, it is not well-settled on whether compliance with the National Manual is mandatory.

Section 1A.13 of the National MUTCD provides the definitions for the text headings of "Standard," "Guidance," "Option," and "Support." Section 4D.20 is a

"Standard," and Standard is defined as:

> a statement of required, mandatory or specifically prohibited practice regarding a traffic control device. All Standards statements are labeled, and the text appears in bold type. The verb "shall" is typically used. The verbs "should" and "may" are not used in Standard statements. Standard statements are sometimes modified by options. Standard statements shall not be modified or compromised based upon engineering judgment or engineering study.

NATIONAL MANUAL ON UNIFORM TRAFFIC CONTROL DEVICES, 2009, § 1A.13. The 2003 National MUTCD contained Section 1A.09 which stated that "the decision to use a particular device at a particular location should be made on the basis of either an engineering study or the application of engineering judgment … this Manual should not be considered a substitute for engineering judgment." However, that language was removed from the 2009 National MUTCD. In an official interpretation of the removal, the Federal Highway Administration (FHWA) explained that the removal of Section 1A.09 was not intended to change the previously existing meaning of Standard or the appropriate application of engineering judgment and studies. The official interpretation further explained that the States could continue to maintain or adopt language in their State manuals in conformance with the language of Section 1A.09 from the 2003 National MUTCD without jeopardizing their substantial compliance. Texas maintained the language in its State Manual.

The official interpretation goes on to explain that Agencies are permitted to adopt policies or procedures that exceed the requirements of a Standard, and to use engineering

judgment or studies that lead to decisions to exceed the requirements of a Standard based upon conditions at any given location. The interpretation states that the National MUTCD allows exceptions to the Standards by 1) Option statements that modify a Standard, and 2) language within the Standard itself such as "except where otherwise provided in this Manual." The official interpretation specifically states that it does not disallow application of engineering judgment or studies in applying those Standards where the language of a particular Standard explicitly or implicitly requires it.

While the interpretation seems to suggest States can maintain language similar to Section 1A.09 of the 2003 Manual, it also suggests that it is to allow for policies and procedures that exceed the requirements of the National MUTCD, not that lessen the requirements. Section 4D.20, the Standard at issue here, does not explicitly or implicitly require application of engineering judgment, but rather specifically states that if a separate left-turn signal face is being operated in a protected/permissive left-turn mode, a circular green signal indication shall not be used in that face.

I find no case law specifically providing that compliance with the National MUTCD is not mandatory. In *Texas Department of Transportation v. Andrews*, the Court found that any failure to comply with the National Manual did not waive immunity under Section 101.060 (a) (1) of the Texas Civil Practice and Remedies Code. *Texas Department of Transportation v. Andrews*, 155 S.W.3d 351, 359-360 (Tex. App.—Fort Worth 2004, pet. ref'd). However, in that case the Court specifically found that the appellees

offered no evidence that the roadways in question did not conform to the National MUTCD. *Texas Department of Transportation v. Andrews*, 155 S.W.3d at 359. There is no dispute in the case before us that the traffic signal did not comply with the National MUTCD. Moreover, the Court in *Andrews* found that immunity was not waived under Section 101.060 without addressing Section 101.056. *Id* at 360. I find *Andrews* to be distinguishable. Section 101.056 provides that immunity is not waived for suits based upon discretionary acts. I would find that compliance with the National MUTCD is not discretionary.

The National MUTCD requires compliance with its provisions for States receiving federal money. TxDOT contends that the remedy for failing to comply is loss of funding, not waiver of immunity. However, it is the Texas Civil Practice and Remedies Code that allows waiver of sovereign immunity for non-discretionary acts of the governmental unit. TEX. CIV. PRAC. & REM CODE § 101.056 (West). Accepting federal funds does not in itself operate to waive the State's loss of sovereign immunity, but rather it is failure to comply with a mandatory provision that results in the waiver of immunity.

I would hold that compliance with the National MUTCD was mandatory, and the failure of TxDOT to comply with the manual resulted in wavier of immunity under Section 101.056. Therefore, I would affirm the trial court's Order denying TxDOT's motion to dismiss.

MATT JOHNSON
Justice

Dissenting Opinion delivered and filed August 4, 2021

